Russell S. Buhite, OR 142529
Russell.Buhite@ogletree.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1201 Third Avenue, Suite 5150
Seattle, WA 98101
Telephone:     206-693-7057
Fax:              206-693-7058

**ATTORNEYS FOR DEFENDANT**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **STEPHANIE S. VAUGHN,** | **Case No.: 3:17-cv-01904-BR** |
| **Plaintiff,** | |
| **v.** | **DEFENDANT HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| **HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,** | |
| **Defendant.** | |

1 – DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

# Table of Contents

I.      CERTIICATION UNDER LR 7-1(a) ...................................................................... 4
II.     DEFENDANT'S MOTION ................................................................................... 4
III.    INTRODUCTION ................................................................................................ 4
IV.     STATEMENT OF MATERIAL FACTS ............................................................. 6
    A.      Plaintiff's Disability Claim with Hartford ............................................... 6
    B.      Hartford's 2017 Claim Review ................................................................. 7
    C.      Hartford's Claim Denial and Review of Appeal ...................................... 10
    D.      Hartford Group Policy and Certificate of LTD Insurance ....................... 13
V.      ARGUMENT ....................................................................................................... 15
    A.      Legal Analysis ......................................................................................... 15
        1.      The Applicable ERISA Standard of Review is Abuse of Discretion ................... 15
        2.      The LTD Certificate Clearly Confers Discretion ................................. 15
        3.      The LTD Certificate is the Controlling Plan Document ....................... 16
        4.      Application of the Abuse of Discretion Standard of Review Under ERISA ........ 18
    B.      Hartford's Denial of Plaintiff's Claim Was Reasonable, Based on Substantial
    Evidence in the Record, and not Clearly Erroneous ................................................. 20
        1.      Plaintiff Bears the Burden of Proving Continuing Disability ............................. 20
    C.      Hartford's Ongoing Review of Record ..................................................... 21
        1.      Plaintiff's Claimant Questionnaire of March 9, 2017 ........................... 21
        2.      Dr. Fourtounis' Chart ........................................................................... 22
        3.      Additional Medical Visits in 2017 ....................................................... 23
        4.      Plaintiff's Infrequent Endocrinologist Office Visits for Diabetes ....... 24
        5.      Plaintiff's Treatment for Dupuytren's Contracture .............................. 24
    D.      Hartford's Review of Current Functionality by Surveillance Video ........ 26
        1.      In-Person Interview of Plaintiff ........................................................... 28
        2.      Hartford's Referral of File for Independent Physician Review by Dr. Rea ......... 29
        3.      Hartford's Solicitation of Comment From Treating Physicians ........... 30
        4.      Hartford's Determination that Plaintiff was no Longer Disabled ......... 30
    E.      Hartford's Further Review on Appeal by Obtaining Three Independent Peer Review
    Opinions from Board-Certified Physicians to Address Claimed Disability ............. 31
        1.      Peer Review by Dr. Fletcher ................................................................ 32
        2.      Peer Review by Dr. Shvarts .................................................................. 33
        3.      Peer Review by Dr. Gause .................................................................... 34
    F.      Hartford's Decision to Uphold Denial of Further Benefits on Appeal is Supported by
    Substantial Evidence in the Record .......................................................................... 35
    G.      Plaintiff's Citation to Earlier Medical Records and Prior Claim Approval are not
    Central to the Dispute as to Whether, as of October, 2017 Plaintiff Established Continuing
    Disability .................................................................................................................... 37
VI.     CONCLUSION .................................................................................................... 38
VII.    CERTIFICATE OF COMPLIANCE ................................................................... 38

2 - DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

## Cases

*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) .......................... 15, 16, 19, 37
*Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) ..................................................... 21
*Butler v. Shoemake*, 173 F.Supp.2d 1069 (D. Or. 2001) ............................................................. 15
*Clark v. Hartford Life and Acc. Ins. Co.*, 195 F. App'x 932 (11th Cir. 2006) ........................... 17
*Clark v. Washington Teamsters Welfare Trust*, 8 F.3d 1429 (9th Cir. 1993) .............................. 18
*Cusson v. Liberty Life Assur. Co. of Boston*, 592 F.3d 215 (1st Cir. 2010) ................................ 28
*Daigle v. Hartford Life & Acc. Ins.* Co., 452 Fed. App'x 689 (8th Cir. 2011) ............................ 28
*Day v. AT&T Disability Income Plan*, 698 F.3d 1091 (9th Cir. 2012) ........................................ 18
*DiCamillo v. Liberty Life Assur. Co. of Boston*, 287 F.Supp.2d 616 (D. Md. 2003) ................... 27
*Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262 (5th Cir. 2004) .................................... 20
*Finley v. Hartford Life & Acc. Ins. Co.*, 400 Fed. App'x 198 (9th Cir. 2010) ............................ 27
*Green v. Union Sec. Ins. Co.*, 646 F.3d 1042 (8th Cir. 2011) ...................................................... 27
*Incing v. Fort Dearborn Life Ins. Co.*, 570 Fed. App'x 724 (9th Cir. 2014) ......................... 21, 38
*Jenkins v. Grant Thornton, LLP*, 2015 WL 349275 (S.D. Fla. 2015) ......................................... 17
*Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869 (9th Cir.2004) ......... 37
*Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999) ............................................... 16, 18
*Lervick v. Hartford Life & Acc. Ins. Co.*, 2014 WL 6997650 (W.D. WA. 2014) ....................... 21
*Marantz v. Permanente Med. Gp., Inc. Long Term Disability Plan*, 687 F.3d 320 (7th Cir. 2012) ........................................................................................................................................................ 28
*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343 (2008) ................................ 19
*Rose v. Hartford Fin. Svcs. Group, Inc.*, 268 Fed. App'x 444 (6th Cir. 2008) ........................... 27
*Salomaa v. Honda Long Term Disability Plan*, 637 F.3d 958 (9th Cir. 2011) ....................... 18, 19
*Snow v. Standard Ins. Co.*, 87 F.3d 327 (9th Cir. 1996) ............................................................. 18
*Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917 (9th Cir. 2012) .......................................... 19
*Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469 (9th Cir.1994) ........................................... 18
*Taylor v. SmithKline Beecham Corp.*, 629 F.Supp.2d 1032 (C.D. Cal. 2009) ............................ 21
*Theta Properties v. Ronci Realty Co.*, 814 A.2d 907 (R.I. 2003) ................................................ 17
*Tindell v. Tree of Life, Inc.*, 672 F.Supp.2d 1300 (M.D. Fla. 2009) ........................................... 17
*Torres v. Reliance Standard Life Ins. Co.*, 2010 WL 276074 (D. Or. 2010) .................... 20, 21, 38
*Tsoulas v. Liberty Life Assur. of Boston*, 454 F.3d 69 (1st Cir. 2006) ........................................ 28
*Turner v. Delta Family-Care Disability & Survivorship Plan*, 291 F.3d 1270 (11th Cir. 2002) . 27

## Statutes

OAR 836-010-0026 ...................................................................................................................... 17
R.I. General Laws §§27-18-79 (2013 ........................................................................................... 17

3 - DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

# I.     CERTIICATION UNDER LR 7-1(A)

The undersigned certifies that the parties have made a good faith effort through telephone conferences and mediation to resolve the dispute but have been unable to do so.

# II.     DEFENDANT'S MOTION

Pursuant to FRCP 56, Defendant Hartford Life and Accident Insurance Company ("Hartford"), by and through its counsel of record, files this Cross-Motion for Summary Judgment and Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. 40). For the reasons stated and authority, and evidence cited below, Defendant's Cross-Motion should be granted and Plaintiff's Motion should be denied.

# III.     INTRODUCTION

Hartford is entitled to summary judgment in this matter governed by the Employee Retirement Income Security Act ("ERISA") as to Plaintiff's claim that she is disabled from her occupation as a family practice physician because its decision to deny further benefits beyond October 31, 2017 was reasonable and based on substantial evidence in the record. Plaintiff last worked in March, 2013 and had a regularly-scheduled work week of 20 hours. The applicable standard of review under ERISA is abuse of discretion, as the Certificate of Insurance grants discretion to Hartford to determine entitlement to benefits and interpret plan terms. The group policy, which was issued to a trust in Rhode Island and incorporates the Certificate of Insurance, states that the Certificate controls as to issues of coverage and grant of discretion.

Hartford's decision to deny further benefits should be upheld because the medical evidence and claims investigation in 2017, including surveillance video, show that Plaintiff was not restricted from engaging in vigorous physical activity, and indeed was active, during the majority of time for which she claimed disability. In 2017, the year in which benefits were denied, Plaintiff

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

stated she was not experiencing asthma flares, her primary disabling condition, more than once or twice per quarter. Several of her treating physicians reported in 2017 that when she was not experiencing asthma flares she was capable of working a 40 hour week, could lift up to 30 lbs., and perform unrestricted sitting, standing, and walking, and that she had the full use of her upper extremities. The surveillance footage and personal interview cast doubt on the claimed frequency, duration, and severity of asthma flares. It showed that in March and April, 2017, Plaintiff engaged in vigorous yard work, including aerating her yard, and bending, pulling sod, and moving garbage cans; and went on a two-hour hike before later mowing her lawn (a task that she denied even doing in her recorded interview with Hartford) and trimming with a weedeater. In her recorded interview, she claimed that she was in an asthma flare, and taking prednisone, the entire month of March.

The medical records did not demonstrate that Plaintiff's use of steroids at home for her asthma caused her any cognitive deficits or mood changes, and reflect instead that she was alert and in good spirits. Her written interaction with her doctors demonstrated that in 2017 she was articulate, lucid, affable and otherwise able to communicate without difficulty. Plaintiff attended very few doctor's appointments for her asthma, diabetes, and dupuytren's contracture conditions in 2017. She had not seen her endocrinologist for diabetes since 2015 and, as a result, her diabetes was not properly controlled. She saw her primary physician only three times in 2017 and one of those visits was primarily for completing disability paperwork. She was hospitalized for one day in December, 2017 for asthma, where she had higher dosages of IV steroids without mood effects, and was discharged with acceptable respiratory test results. Rather than attend office visits, she self-treated at home for asthma and sent emails to her primary care physician stating when she had a flare. On at least one instance when she reported in an email to be in a flare, on April 21, 2017,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

she was filmed on video hiking and mowing the lawn. As to dupuytren's contracture, at the time benefits were denied Plaintiff primarily had symptoms in her ring and pinky fingers, and chose to put off surgery until her index fingers were more involved.

Hartford carefully considered all of the medical records received, Social Security disability award from December, 2015, surveillance video, recorded interview, and all other materials contained within the claim file. It obtained an independent peer review report from a board-certified occupational physician prior to denying further benefits, and obtained three more independent physician opinions on appeal, including one for each of the claimed disabling conditions. Each review concluded that although Plaintiff had asthma, diabetes, and dupuytren's contracture, the medical evidence, recorded interview, and surveillance video showed that these conditions would not prevent her from performing the material duties of her occupation for a 40-hour work week though only 20 hours per week was at issue per Plaintiff's regularly-scheduled work week.

Hartford's decision to deny further benefits beyond October 31, 2017 should be upheld as reasonable and not an abuse of discretion. Defendant requests that this Court grant it's Cross-Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, and grant Defendant fees, costs and such further relief as the Court deems appropriate.

## IV. STATEMENT OF MATERIAL FACTS

### A. Plaintiff's Disability Claim with Hartford

1. Plaintiff's occupation was as a family practice physician employed by Northwest Permanente, P.C. Joint Statement of Facts (Dkt. 46), no. 1. As of the date of her disability claim, she had a regularly scheduled work week of 20 hours. (Vaughn Claim File 000115). Plaintiff's last date of work was March 4, 2013. *Id.*

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

2.     Plaintiff applied for LTD benefits with Hartford on March 21, 2013, claiming that her asthma, prednisone treatment, and juvenile-onset diabetes mellitus rendered her disabled under the terms of the LTD Certificate.  Joint Statement of Facts (Dkt. 46), no. 4. Plaintiff's claim was approved by Hartford and she began receiving long-term disability (LTD) benefits from Hartford effective August 31, 2013, based upon its conclusion that Plaintiff was unable to perform one or more of the essential duties of her occupation because of her disability.  *Id*. at no. 5. The medical records, statements, and other materials submitted by her in support of the claim were sufficient to establish her inability to perform the material duties of her occupation through October 18, 2017. *Id*. at no. 6.

**B.     Hartford's 2017 Claim Review**

1.     In Spring, 2017, Hartford conducted a routine review of Plaintiff's continued eligibility for disability benefits.  *Id*. at no. 7.  Because the restrictions and limitations stated by her treating physicians in updated medical records were greater than what the medical records demonstrated (for example, she was restricted in every activity but only reported asthma flares 1-2 times per quarter), Hartford referred the matter to its Special Investigative Unit (SIU) for further investigation.  (Vaughn Claim File 003945).

2.     The SIU investigation included video surveillance in March and April, 2017 to determine the level of her activity. Joint Statement of Facts (Dkt. 46), no. 9. During this surveillance, Plaintiff was observed performing activities such as yard work, hiking, pushing equipment around her yard, driving, entering and exiting cars, all without any observable distress, hesitation or impairment.  Surveillance footage of Plaintiff one day after a reported asthma flare revealed Plaintiff participating in a 2-hour hike, then mowing her lawn and performing yard work upon returning home.  In addition to a physically active day, surveillance footage reveals Plaintiff exhibited no difficulty manipulating an aerating tool with her hand, and handling other tools and

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

machinery while performing yard work. She performed vigorous physical activity with yard tools for an extended period. (Vaughn Claim File 003948-3949).

3. Hartford conducted an in-person interview of Plaintiff on May 12, 2017. (Vaughn Claim File 004027-004041). Plaintiff stated that she could not return to work in a clinical setting due to asthma and diabetes. She also stated that she could not extend her ring and pinky fingers of her right hand due to dupuytren's contracture. She stated that she had asthma flares about a quarter of the time and that she been in the flare stage since March, 2017. She confirmed that when not in flare she could engage in physical activities such as pushing and pulling, cooking dinner, driving, sitting for as long as she liked, walking and hiking, gardening and maintaining her yard, and lifting and carrying up to 30 lbs. She indicated that on non-asthma flare days she feels really strong and can walk for hours. *Id.*

4. While Plaintiff reported in her claimant interview that she had been in an asthma flare for the entire month of March, she demonstrated extensive physical activity captured in the SIU video taken on March 28, 2017. Similarly, April 21, 2017 SIU video revealed extensive activity of driving to Columbia River Gorge, hiking from 9:30 a.m. to 11:30 a.m., mowing the lawn, and operating a weedeater, on the very day that she emailed her physician that she was experiencing a "flare" that was not controlled due to "this spring bloom." (Vaughn Claim File 002564). Her personal notes on that day state that she was on early steroid nebulizer during the morning, passed a congestion "plug", took several steroid inhalations during the day, and had "minimum peak flow" of 250, "Bgs under 250." (Vaughn Claim File 002225).

5. During 2017, Hartford conducted a thorough review of Plaintiff's medical treatment. As part of its claim review, it obtained an August 14, 2017 Attending Physician Statement (APS) from Dr. Treat, a treating physician, in which he opined that Plaintiff is able to

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

work a 40 hour week [when not experiencing a "flare"], lift up to 30 lbs., and perform unrestricted sitting, standing, and walking, and that she had the full use of her upper extremities. (Vaughn Claim File 003130-3131). Dr. Krenek, another treating physician, responded in July, 2017 that he had not placed any restrictions or limitations on Plaintiff.  Dr. Rettman, a third treating physician, responded that he had not seen Plaintiff since December, 2015 and could not comment on current functionality.  (Vaughn Claim File 003123-3124).

6.      In order to verify current functionality, Hartford referred the file to an independent third-party vendor for a medical records review, which was completed on September 12, 2017 by Dr. Joseph Rea, Board Certified in Occupational Medicine.  (Vaughn Claim File 003133-3137). Dr. Rea agreed with the assessments by Dr. Krenek and Dr. Treat as to Plaintiff's abilities concerning her physical function.  He agreed with primary care doctor Fourtounis, that during an asthma flare, Plaintiff would have to limit her activity.  While some physicians reported flares 4-5 times per quarter, Plaintiff herself had stated that the incidence of flares in 2017 was only 1-2 times per quarter.  Dr. Rea concluded that Plaintiff could occasionally lift up to 30 lbs., with frequent lifting up to 10 lbs., and that she had no other limitations involving sitting, standing, walking, climbing, kneeling, reaching in any direction or general use of her hands. (Vaughn Claim File 003136).

7.      Despite the alleged severity of her asthma and diabetes, Plaintiff self-treated her asthma flares at home with prednisone and albuterol, emailing her physician when she had a flare, rather than attending doctor's visits (Vaughn Claim File 002538-25568; 002994-003031).   In 2017, she required only one hospitalization for a flare (after her LTD was denied) for one day. She attended only three office appointments with her primary care physician, Dr. Fourtounis, in 2017:

9 - DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

January 23, October 16, and November 6. (Vaughn Claim File 001363; 001482; 001520). Additionally, she did not see an endocrinologist regularly for her uncontrolled diabetes.

C.     **Hartford's Claim Denial and Review of Appeal**

8.     Based on its review of Plaintiff's medical records, Dr. Rea's independent review, the surveillance, and taking into consideration Plaintiff's ongoing medical conditions, Hartford concluded that Plaintiff no longer met the definition of "Disability" in the Plan. In a letter dated October 19, 2017, Hartford notified Plaintiff that it was denying ongoing LTD benefits beyond October 31, 2017. Joint Statement of Facts (Dkt. 46), no. 10. (Vaughn Claim File 000155-160).

9.     Plaintiff appealed this denial in February, 2018, represented by counsel. *Id.*, at no. 11. After receiving her claim denial, Plaintiff reached out to her treating physicians, Dr. Fourtounis and Dr. Treat, to ask that they provide opinions regarding her disability. Dr. Treat initially reminded Plaintiff that he could not make a determination regarding her "disability" but could merely state the facts of her medical conditions. Both physicians eventually submitted "to whom it may concern" letters indicating that Plaintiff is "disabled" when experiencing a "flare" for purposes of the appeal to Hartford. (Vaughn Claim File 002214-18; 002212-13). In Dr. Treat's case, this letter contradicted his prior statement to the patient on November 14, 2017 that "as physicians, we do not determine if you are disabled or not." (Vaughn Claim File 001531).

10.     In addition to reviewing the medical records and all claim materials anew, Hartford obtained three independent medical records reviews from board-certified physicians, Dr. Anita Shvarts, (allergy and immunology), Dr. Dana Fletcher (endocrinology), and Dr. Trenton Gause (orthopedic surgery). All three independent physicians concluded, after a full review, that Plaintiff was capable of a 40-hour work week without restriction, with periodic absences of 1-2 days quarterly for acute "flares." (Vaughn Claim File 00296-00303; 00287-00295; 00277-00286).

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

11.     Dr. Fletcher agreed with treating physicians Krenek and Treat that Plaintiff required no restrictions. She found no evidence that diabetes or medications were affecting cognition or behavior so as to interfere with her ability to perform her job.  (Vaughn Claim File 000287-295).

12.     Dr. Fletcher noted that with regard to blood sugar levels, the medical records did not document diabetic ketoacidosis or emergency room visits for high blood sugars which would be expected in a diabetic patient with claimed levels as high as 900.  There were no blood sugar logs, records, hospital or office visit notes presented by Plaintiff that supported the 900 elevation claimed. During her hospitalization in December, 2017, while on IV steroids stronger than the prednisone she used at home, the highest blood sugar level recorded was 425.  Plaintiff reported in December, 2017 that she had not seen her endocrinologist, Dr. Prihoda, for diabetes for two years.  Before that, she last saw him in 2010. As to asthma exacerbation, the medical records reflect only one hospitalization from 2010-2017.

13.     Dr. Shvarts concluded that the records did not support that Plaintiff had restrictions or limitations due to persistent asthma.  She noted normal lung examination after a one-day hospital admission for flare.  On non-asthma flare days, Plaintiff reported that she could walk for hours and felt really strong.  The severity and frequency of her flares were found to be insufficient to support disability. (Vaughn Claim File 000277-286).

14.     Although Plaintiff sent several emails in 2017 to treating primary physician Fourtounis that she was experiencing an asthma flare, there were no subsequent visits or evaluations that, in Dr. Shvarts' opinion, would allow one to confirm the extent of the flare. Medical records in 2017 only reflect two documented dates when Plaintiff sought treatment for asthma flares: November 6, 2017 and December 7, 2017.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

15.     Dr. Shvarts also addressed the claim that the treatment of Plaintiff with steroids caused her to be irritable and mentally stressed, commenting that when Plaintiff was hospitalized for an asthma flare on December 7, 2017, the hospital record did not document that she was mentally unstable or exhibiting any behavioral changes, while on IV steroids that were stronger than the prednisone that Plaintiff had been taking at home.

16.     As to Plaintiff's diabetes, while on intravenous steroids in the hospital December 7-8, 2017, the hospital documented blood sugar readings in the 325-425 range and not the 900 levels claimed by Plaintiff during the claim interview on May 12, 2017.  (Vaughn Claim File 001570).

17.     When Plaintiff saw Dr. Fourtounis six days after discharge, on December 14, 2017, she remained on prednisone, but Dr. Fourtounis documented normal lung function, normal mood and affect, and no severely elevated blood sugar levels.  (Vaughn Claim File 001521).

18.     Reviewing physician Dr. Gause concluded that Plaintiff's dupuytrens contracture should not preclude her from performing her occupation.  He noted that the video surveillance showed fluid use of her hands with tools as well as grip strength and dexterity.  (Vaughn Claim File 00296-303).

19.     Following its review of the records submitted by Plaintiff on appeal, three peer review reports, complete medical records received to date, Social Security Administration opinion of December, 2015, and all other materials in the file, Hartford upheld its decision that Plaintiff did not meet her burden of establishing disability from her occupation beyond October 31, 2017. It notified Plaintiff of its decision by letter dated March 26, 2018.  (Vaughn Claim File 00137-147).

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

### D. Hartford Group Policy and Certificate of LTD Insurance

20.     Hartford issued a Group LTD Policy to the Trustee of the Health Care Industry Group Voluntary Life and Disability Insurance Trust. *See* Declaration of Patricia M. Pfeifer filed in support hereof, and composite Exhibit "A" thereto.

21.     The Group LTD Policy states that the terms set forth in the Certificates issued to participants such as Plaintiff govern as to issues of coverage. The Group LTD Policy issued to the Trust was effective during the pendency of Plaintiff's claim. *See* Declaration of Patricia M. Pfeifer filed in support hereof, and composite Exhibit "A" thereto, Policy p. 3.[1]

22.     At all times relevant, Hartford was the claims administrator for benefits under the group LTD Certificate of Insurance ("LTD Certificate") and administered Plaintiff's claim for benefits under the LTD Certificate. Joint Statement of Facts (Dkt. 46), no. 3.

23.     The LTD Certificate describes the coverage provided under the Group Policy to Plaintiff as a participant employee of Northwest Permanente P.C.

24.     The LTD Certificate contains the following relevant terms:

> "**Disability or Disabled**" means You are prevented from performing one or more of the Essential Duties of:
>
> 1)     Your Occupation during the elimination Period; and
>
> 2)     Your Occupation, following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings.
>
> …
>
> Your Disability must result from:

---

[1] Hartford, despite diligent search during the litigation of this case, located the Group Policy issued to the Trust only recently, and notified counsel on Friday, March 1, 2019. *See* Declaration of Russell S. Buhite. Counsel then confirmed that the Group Policy was effective during the dates of the Vaughn claim. The applicable Policy Certificate containing all pertinent benefit terms was provided earlier in litigation. Hartford moves to supplement the record with these Policy materials.

13 - DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

1) accidental bodily injury;

2) sickness;

3) Mental Illness …

Your failure to maintain a license to perform the duties of an occupation, alone, does not mean that You are Disabled….

**Vaughn Policy 000024-25.**

**"Essential Duty** means a duty that:

1) is substantial, not incidental;

2) is fundamental or inherent to the occupation; and

3) cannot be reasonably omitted or changed.

Your ability to work the number of hours in Your regularly scheduled workweek is an Essential Duty."

**"Your Occupation"** means

…

If you are a physician, …the general or sub-specialty in which you are practicing for which there is a specialty or sub-specialty recognized by the American Board of Medical Specialties….

**Termination of Payment**: When will my benefit payments end?

Benefit payments will stop on the earliest of:

1) the date You are no longer Disabled […]

**Vaughn Policy 000016.**

25. The Policy Certificate confers discretion on Hartford in making claims decisions and interpreting Policy terms:

**Policy Interpretation**:  Who interprets the terms and conditions of The Policy?

"We [Hartford] have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions in The Policy…."

14 - DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

**Vaughn Policy 000024.**

Further, in the ERISA Information section of the Policy Certificate, it states in relevant

part:

> "The Plan has designated and named [Hartford] as the claims
> fiduciary for benefits provided under the Policy.  The Plan has granted
> [Hartford] full discretion and authority to determine eligibility for benefits
> and to construe and interpret all terms and provisions of the Policy."

**Vaughn Policy 000036.**

## V.      ARGUMENT

### A.      <u>Legal Analysis</u>

#### 1.      The Applicable ERISA Standard of Review is Abuse of Discretion

When an ERISA plan vests the plan fiduciary with discretionary authority to determine

benefit eligibility, courts review a decision to deny benefits for abuse of discretion.  *See Abatie v.*

*Alta Health & Life Ins. Co.,* 458 F.3d 955, 963 (9th Cir. 2006). Where a plan fiduciary has

discretion, a motion for summary judgment provides the "conduit" for bringing the issue before

the court.  *Butler v. Shoemake*, 173 F.Supp.2d 1069, 1074 (D. Or. 2001).  The LTD Certificate in

this case contains a clear and unambiguous grant of discretionary authority to Hartford as claims

review fiduciary to interpret the policy and the plan and to make decisions on benefit eligibility.

(Vaughn Policy 000024, 36).

#### 2.      The LTD Certificate Clearly Confers Discretion

Plaintiff incorrectly argues that the LTD Certificate does not govern the dispute and, even

if it does, it does not clearly confer discretion on Hartford as to administration of the claim.

Although the LTD Certificate refers to a master group policy issued to the Trustee of the Health

Care Industry Group Voluntary Life and Disability Insurance Trust, Policy No. GVL-16008, the

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

present claim was adjudicated pursuant to the terms of the LTD Certificate and the terms of that document should govern this dispute.

The grant of discretion to Hartford in the LTD Certificate satisfies the requirements set forth in *Abatie* for a clear and unambiguous grant of discretionary authority in that it states explicitly that "[Hartford has] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions in The Policy" and that "The Plan has granted [Hartford] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." In *Abatie*, the Ninth Circuit held that wording in a plan document that bestowed on the claim administrator "the power to interpret plan terms and to make final benefits determinations" was sufficient to confer discretion. *Abatie*, 458 F.3d at 963. By contrast, in the case cited by Plaintiff, *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999), the court held that a requirement that the claimant produce "satisfactory proof" of disability was insufficient to confer discretion.

### 3. The LTD Certificate is the Controlling Plan Document

The Master Group Policy issued to the Trustee of the Health Care Industry Group Voluntary Life and Disability Insurance Trust ("Trust") applicable to the dates of the present claim has only been located, after diligent searches, on March 1, 2019. The Policy issued to the Trust in Rhode Island, effective January 1, 1994, and Master Trust Agreement of 1986, as amended January 1, 1997, are attached as Exhibit "A" to the Declaration of Patricia M. Pfeifer filed in support hereof. The Policy further contemplates that Certificates evidencing coverage thereunder will be issued to participants such as Plaintiff. Significantly, the Policy also clearly states that the Booklet-Certificates evidencing coverage are incorporated into the Policy and that the terms of the Booklet-Certificates will control as to coverage issues presented. *See* Master Policy, p. 5. Further, the

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

Policy was delivered to the Trust in Rhode Island prior to the enactment by Rhode Island of its ban on discretionary clauses for disability policies. *See* R.I. General Laws §§27-18-79 (2013).[2] Accordingly, as the Master Policy was *not* issued in Oregon, contrary to Plaintiff's arguments, the administrative ban on discretionary clauses in OAR 836-010-0026 does not apply.

The Hartford LTD Certificate qualifies as a written instrument under ERISA's plan document provision. In *Tindell v. Tree of Life, Inc*., 672 F.Supp.2d 1300 (M.D. Fla. 2009), the court found that where benefits available under a plan are insured, "the underlying insurance policy is considered a plan document for purposes of ERISA." *Id.* at 1302, n. 3. *See also Jenkins v. Grant Thornton, LLP*, 2015 WL 349275 at *7 (S.D. Fla. 2015) ("although the [Hartford] 2008 LTD Plan Booklet–Certificate contains language suggesting it is not the insurance policy or the plan, it nonetheless is considered a plan document for purposes of ERISA because it provides a summary of the insurance policy which forms part of the "'LTD Only Plan.'"). Courts have recognized that a Hartford long-term disability Booklet-Certificate can be a plan document. *See Clark v. Hartford Life and Acc. Ins. Co.*, 195 F. App'x 932, 935 (11th Cir. 2006). Accordingly, the LTD Certificate is the operative plan document, the contents of which must be considered on the issue of whether Northwest Permanente, P.C. conferred on Hartford the discretionary authority to determine entitlement to benefits, as well as to construe and interpret plan terms. The relevant documents demonstrate that this discretionary authority was clearly conferred here.

Finally, although Plaintiff now argues for *de novo* review, Plaintiff has conducted "conflict" discovery in this case, which is only relevant when abuse of discretion review applies,

---

[2] It is questionable whether the Rhode Island discretionary ban enacted June 17, 2013 even applies to disability claims as it is contained in the long-term care insurance statute. Even if it does, the statute cannot apply retroactively to ban discretionary policies issued prior to its enactment. *See, e.g., Theta Properties v. Ronci Realty Co*., 814 A.2d 907, 916 (R.I. 2003)(holding that the Rhode Island Constitution prohibits retroactive legislation that impairs vested contractual rights).

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

and in her two Motions to Compel cited arguments from abuse of discretion cases where structural conflict was alleged.  *See* Motions to Compel (Doc. 22, 28).  Accordingly, there should be no question that the abuse of discretion standard of review applies to this Court's review.

### 4. Application of the Abuse of Discretion Standard of Review Under ERISA

"ERISA plan administrators 'abuse their discretion if they render decisions without any explanation, ... construe provisions of the plan in a way that conflicts with the plain language of the plan' " or "rel[y] on clearly erroneous findings of fact." *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1472–73 (9th Cir.1994). *See also Day v. AT&T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012). Under the clearly erroneous standard, a denial of benefits can only be overturned if the court is left with a "definite and firm conviction that a mistake has been committed." *Taft*, 9 F.3d at 1472.  The court may not merely substitute its views for that of the fact finder. *Salomaa v. Honda Long Term Disability Plan*, 637 F.3d 958, 967 (9th Cir. 2011). A court reviewing a plan fiduciary's interpretation of the administrative record does not decide whose interpretation is the most persuasive but instead decides "whether the plan administrator's interpretation is reasonable."  *Clark v. Washington Teamsters Welfare Trust*, 8 F.3d 1429, 1432 (9th Cir. 1993).  "The mere fact that the plan administrator's decision is contrary to some evidence in the record does not show that the decision is clearly erroneous." *Snow v. Standard Ins. Co*., 87 F.3d 327, 331 (9th Cir. 1996), *overruled on other gds. by Kearney v. Standard Ins. Co*., 175 F.3d 1084 (9th Cir.1999) (en banc).

Plaintiff argues that if the Court applies discretionary review, it must factor in Hartford's structural conflict of interest. An insurer who acts as both the decision maker and the funding source of the benefits operates under a structural conflict of interest. *Abatie*, 458 F.3d at 965. However, the abuse of discretion standard of review applies even when the claim fiduciary is acting

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

under a structural conflict of interest. *Id.* Under this scenario, the court considers the conflict as a factor in deciding whether defendant abused its discretion. *Id*. at 968-69. When there is a technical conflict of interest unaccompanied by evidence of something more, the court will apply a low level of skepticism to the decision. *Id.* at 968. Greater skepticism is warranted only when the structural conflict of interest is accompanied by such things as shifting explanations for denial, evidence of malice, self-dealing, failure to adequately investigate or when defendant fails to ask plaintiff for necessary evidence, or fails to credit claimant's reliable evidence. *Id*.

Here, there is nothing in the record evidence to suggest that Hartford's determination was "illogical, implausible or without support" nor is there anything that should leave the Court with the "firm conviction that a mistake has been made." *Salomaa*, 637 F.3d at 967. Further, despite a structural conflict of interest, Hartford has taken active steps to promote accuracy in decision-making and to reduce the potential of bias to affect the decision-making process. *See Haselmayer Declaration* filed in support of Hartford's Memorandum in Opposition to Plaintiff's Motion to Compel (Dkt.26, Ex. "A")*.* Where, as here, the plan fiduciary takes active steps to reduce the potential for bias and to promote accuracy in decision-making, the conflict of interest "should prove less important (perhaps to the vanishing point). *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117, 128 S.Ct. 2343, 2351 (2008); *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012) (citing *Glenn*). Plaintiff has presented no record evidence demonstrating that any structural conflict of interest has affected the administration of her claim in any fashion. Under *Abatie*, the Court should apply a very low level of skepticism to the decision in light of the technical conflict.

Hartford has walled off its claims decision-makers and taken steps to minimize the effects of any conflict. It separates claims and appeals units who each make independent assessments of

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

the evidence. It is Hartford's practice and intention to review such claims fairly, without regard to the manner in which the plan is funded. Hartford does not provide its claims and appeals decision-makers with incentives, remuneration, bonuses, awards, achievements, or other recognition based in whole or in part upon the denial or termination of claims. Hartford's claims and appeals decision-makers are paid fixed salaries and performance bonuses that are wholly unrelated to the number of claims paid vs. claims denied. Hartford's claims and appeals decision-makers are evaluated on the quality and accuracy of their claims decisions in accordance with the applicable plan/policy documents, and they are not discouraged from paying legitimate claims. Hartford's claims and appeals decision-makers are not involved in Hartford's financial decisions and neither the claims department nor the appeals unit seeks approval from Hartford's financial underwriters in connection with their decision-making on claims for disability benefits. Hartford's financial and underwriting departments do not advise or influence the claims department or appeals unit with respect to the denial or termination of a claimant's benefits. *See* Dkt.26, Ex. "A," Haselmayer Declaration.

### B.     Hartford's Denial of Plaintiff's Claim Was Reasonable, Based on Substantial Evidence in the Record, and not Clearly Erroneous

#### 1.     Plaintiff Bears the Burden of Proving Continuing Disability

Because the Policy clearly authorizes Hartford to terminate benefits if an insured ceases to be "disabled" or fails to furnish proof of disability, it is entitled to require that Plaintiff show continued disability and provide periodic updates of her condition. *See Torres v. Reliance Standard Life Ins. Co*., 2010 WL 276074, at *7 (D. Or. 2010) (citing *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 274 (5th Cir. 2004))**.** To terminate benefits, Hartford is not required to establish that Plaintiff's condition improved after it originally determined that she was entitled to benefits. *Torres*, 2010 WL at * 8, citing *Taylor v. SmithKline Beecham Corp.*, 629 F.Supp.2d

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

1032, 1042 (C.D. Cal. 2009) (citing *Ellis*). In addition, Hartford need not afford any deference to the opinions of treating physicians in evaluating a claim. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829-834 (2003)(rejecting "treating physician rule"). Accordingly, a plan administrator does not need to give special consideration to the opinion of a treating physician over a reviewing physician, nor "does [ERISA] impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Id.* at 831, 834, 123 S.Ct. 1965. *See also Inciong v. Fort Dearborn Life Ins. Co.*, 570 Fed. App'x 724, 726 (9th Cir. 2014); *Lervick v. Hartford Life & Acc. Ins. Co.*, 2014 WL 6997650 at *6 (W.D. WA. 2014)(following *Nord* in weighing opinions of treating and reviewing physicians). Hartford was within its rights to continue to evaluate Plaintiff's eligibility for ongoing benefits under the LTD plan and, if warranted, to decide to terminate those benefits based on the record as a whole. *Torres*, 2010 WL 276074 at *8.

The records here show that Plaintiff's treating physicians were equivocal in supporting her disability over time. Under these circumstances, Hartford was within its rights to accept the opinions of the reviewing physicians over those of the treating physicians. *Id.*

### C. Hartford's Ongoing Review of Record

As part of its continuing review as to whether Plaintiff remained disabled from her occupation as a family practice physician, it reviewed attending physician statements ("APS"), claimant questionnaires, and medical records from 2014 to 2017. It ordered and reviewed medical records from Kaiser Permanente treating physicians, including Dr. Fourtounis, Dr. Weissflog, Dr. Rettman, Dr. Krenek, and Dr. Treat.

#### 1. Plaintiff's Claimant Questionnaire of March 9, 2017

Hartford received Plaintiff's Claimant's Questionnaire dated March 9, 2017. When asked about her disabling medical conditions in the Questionnaire, Plaintiff stated that she had asthma flare-ups once or twice per quarter but did not mention any other conditions. (Vaughn Claim File

21 - DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

003370-3373). She denied severe cognitive impairment. *Id*. at 003370. Plaintiff stated that she needed assistance with activities of daily living while in asthma flare and when asked about her hobbies and social activities since filing her disability, she stated that she "occasional[ly] walk[ed] with a friend." *Id*. at 003370.

## 2. Dr. Fourtounis' Chart

Dr. Fourtounis' office visits with Plaintiff in 2017 were infrequent. Dr. Fourtounis' office notes for January 23, 2017 reflect a routine follow-up visit in which he described the patient's diabetes that was not well controlled due to frequent steroid use for asthma flares. Her persistent asthma was in "remission" at that time. (Vaughn Claim File 001363). Plaintiff's visit to Dr. Fourtounis of March 6, 2017 was for the primary purpose of completing disability paperwork. (Vaughn Claim File 001383). Dr. Fourtounis completed an APS dated March 6, 2017 (noting a last office visit of 1/23/17) which listed Plaintiff's primary diagnosis as severe recurrent asthma with secondary diagnosis of adverse effects of corticosteroids with symptoms from diabetes. He noted severe asthma flares on January 14, 2017 and February 3, 2017. He opined that she was intermittently ill and that during flares, she was unable to care for herself. (Vaughn Claim File 003375). The next office visit with Dr. Fourtounis reflected in the records was a follow-up on October 16, 2017 which described only referral for occupational therapy and gastrointestinal issues, and brief reference to her diabetes being difficult to control. (Vaughn Claim File 001482). Plaintiff next saw Dr. Fourtounis for asthma flare and health review on November 6, 2017. (Vaughn Claim File 001520). A subsequent telephone consultation of November 14, 2017 (post-Hartford claim denial) is reflected in Dr. Fourtounis' chart, noting a discussion of Plaintiff's disability and Dr. Fourtounis' assessment of her limitations from her conditions preventing her from working. (Vaughn Claim File 001536).

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

Dr. Fourtounis prepared an APS dated November 6, 2017, noting that when Plaintiff was not in asthma flare, and not on prednisone, she could occasionally, up to 2.5 hours, bend, kneel, crouch, climb, and balance. The APS also noted difficulties with hand and finger manipulation due to hand contractures and associated pain. (Vaughn Claim File 001963). Dr. Fourtounis did not complete the section regarding restrictions and limitations for sitting, standing and walking. He commented that when the patient was "wheezing and on steroids patient is asked to be on bedrest, very brief home walking as tolerated by shortness of breath." *Id.*

### 3. Additional Medical Visits in 2017

Kaiser records also reflected that Plaintiff was seen on April 18, 2017 for allergy shots and May 22, 2017 for asthma. As to the latter office visit, with Justin Treat, D.O., Plaintiff was seen for follow up care for severe persistent asthma, allergic rhinitis, and repeat allergy testing. (Vaughn Claim File 001408). The chart reflects that she had last been seen by Dr. Ettinger on February 22, 2017. (Vaughn Claim File 001374). The chart also noted that Plaintiff had had 2-3 flares since the February 22, 2017 office visit and that the patient would treat with 80 mg. prednisone over a two-week time "with taper." Plaintiff needed Albuterol 2-3 times per week.

The chart reflects that Plaintiff contacted Dr. Treat on November 13, 2017, after Hartford issued its initial letter denying further disability benefits. (Vaughn Claim File 001532). Plaintiff emailed Dr. Treat stating that "Have you thought about your stance on this disability issue? They are completely hanging their hat on your several times stating that it was ok to work. I need a letter stating that I am not ok to work when in a flare or on over 10mg of prednisone which is often." *Id.* Dr. Treat responded the next day by email stating that "as physicians we do not determine if you are disabled or not. I can only state that you have frequent flares of asthma and that treatment with prednisone makes it very difficult for you to work." *Id.*

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

### 4. Plaintiff's Infrequent Endocrinologist Office Visits for Diabetes

The records clearly reflect that Plaintiff has Type I diabetes mellitis and that she takes insulin for the condition. Her endocrinologist associated with Kaiser was Dr. James Prihoda. The medical records reflect only very rare office visits with Dr. Prihoda. Plaintiff saw him on April 15, 2010 and then not again until February 4, 2015 and March 3, 2015. (Vaughn Claim File 001651; 001654; 001658-1661). The purpose of the 2015 visits was in anticipation of bariatric surgery. *Id*. She was encouraged to schedule an endocrinology appointment post-surgery but the records do not reflect any such visits in 2015-2017. *Id*. at 001654.

### 5. Plaintiff's Treatment for Dupuytren's Contracture

Kaiser records reviewed by Hartford also reflected Plaintiff's periodic treatment from 2015 through 2017 with Dr. Thilo Weissflog for a hand condition called dupuytren's contracture. The records show that Plaintiff had contractures in her ring fingers on both hands in September, 2015 and obtained treatment from Dr. Weissflog, who used a minimally-invasive technique to release the contracture called "needle aponeurotomy". (Vaughn Claim File 003498). The procedure brought relief and was well-tolerated. In July, 2016, Plaintiff returned for follow-up visit. Her left ring finger retained the relief from contracture from the aponeurotomy, but the right ring finger had some re-contracture and there was some pretendinous contracture in the left pinky finger. Light touch was intact, however, and the patient was able to make a full fist with both hands (Vaughn Claim File 001259). Dr. Weissflog discussed options with the patient and they decided on July 11, 2016 to proceed with Xiaflex enzyme injections to release the tendon contractures, followed by therapy manipulation. (Vaughn Claim File 001260; 003215). Plaintiff was happy with the results and had improved 4-5[th] finger extension. She was referred for occupational therapy

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

with OT Brown. (Vaughn Claim File 001286). Although she was to return in three months for follow up with Dr. Weissflog, there are no further records for 2016.

On June 5, 2017, Plaintiff had an appointment with Dr. Lucie Krenek for dupuytren's contracture. At that time, Plaintiff reported partial relief from the aponeurotomy and Xiaflex procedures but that ring and pinky fingers remained a concern. She had PIP joint contractures in the right ring and pinky fingers, but the MP joint contracture in the ring finger had been corrected. (Vaughn Claim File 001415). The left ring finger had a PIP joint contracture. (Vaughn Claim File 003297). Dr. Krenek discussed surgery for the right ring finger and that her A1c blood glucose level must be under 10 (it was then at 10.4), and ideally should be below 8.5, before surgery could take place. (Vaughn Claim File 001419). The plan was to have surgery in October, 2017 after new blood glucose A1c readings were taken. *Id.* In early November, 2017, Plaintiff attended occupational therapy with Joanne Davenport. Plaintiff described difficulty opening a jar, writing and typing. (Vaughn Claim File 001509). The provider noted right index, ring and pinky finger contractures. She was given exercises to straighten the fingers. *Id.* at 001511.

On November 16, 2017, Plaintiff returned for a visit with Dr. Weissflog for assessment, as she complained of trouble using her right hand due to contractures in the ring and pinky fingers. (Vaughn Claim File 001539). However, Dr. Weissflog noted primarily contractures in the ring and pinky fingers, yet recorded that light touch was intact in fingertips and that she was able to make a fist on both sides. *Id.* They discussed surgery as the best option but noted her blood glucose level remained too high. Plaintiff responded that she probably would *not* opt for surgery and would come back if her index finger on her right hand started contracting more significantly. Dr. Weissflog offered her further Xiaflex injections. (Vaughn Claim File 001540). He completed an APS on November 16, 2017 describing difficulty in fine manipulation (hunt and peck typing) and

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

some limitations on gross manipulation.  (Vaughn Claim File 001966).  He stated that she was unable to use her right hand to examine patients, especially knees, abdomen, and pelvic exams, and not able to open jars, tubes, load syringes. (Vaughn Claim File 001967).  However, this must be regarded as speculation in that Plaintiff had not worked as a physician in the clinical setting since March, 2013, well before she sought treatment for the first time for dupuytren's contracture.

### D.    Hartford's Review of Current Functionality by Surveillance Video

Due to clearly evident discrepancies between her reported incidence of asthma flares in her March 9, 2017 Claimant's Questionnaire of 1-2 times per quarter, and Dr. Fourtounis' APS of March 6, 2017 stating frequent flares and restrictions and limitations, Hartford determined that closer review was warranted to determine current functionality.  Hartford referred the claim to its SIU department for further investigation, which included video surveillance of Plaintiff's activity over several days in March and April, 2017.  This surveillance showed Plaintiff performing activities such as yard work, hiking, pushing equipment around her yard, driving, and entering and exiting cars, all without any observable distress, hesitation or impairment.  In particular, on March 28, 2017, Plaintiff was observed rolling a large garbage can to the street, then operating an aerating tool on her lawn for about an hour, requiring her to press down with her foot while grasping and twisting the tool with her hand, lifting, and then pushing it back into the ground repetitively.  She would then tap the soil into a bucket, bend to pick up clumps of sod, pick up the bucket and carry it to a garbage can, and repeat the strenuous procedure. She was also seen taking off her jacket, walking around the yard, and talking at length to a neighbor.

On April 21, 2017, the very day she reported an asthma flare to her doctor in an email, Plaintiff was observed driving to the Sandy River Delta Park in the Columbia River Gorge area and then hiking with a friend, starting around 9:30 a.m.  She returned to the parking area from the trail around 11:25 a.m., stomped mud from her shoes, opened the car door, and then drove back

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

home. That same afternoon, she went outside, attached a bag to her push lawnmower, mowed the lawn, and then used a weed-eater to trim.  Later that day, she drove away from her home in a sport utility vehicle. The next day, Plaintiff was seen arriving at home from a drive, getting out of her car, using her right hand without difficulty to close the car door, and then walking to her house and opening the door in a normal fashion with her right hand.

A number of courts have noted the usefulness of surveillance in documenting a claimant's actual rather than claimed capabilities in this context.  *See Turner v. Delta Family-Care Disability & Survivorship Plan*, 291 F.3d 1270, 1274 (11th Cir. 2002); *DiCamillo v. Liberty Life Assur. Co. of Boston*, 287 F.Supp.2d 616, 624 (D. Md. 2003) (noting that video surveillance provided objective evidence of the claimant's abilities).  Courts in this circuit and elsewhere have routinely relied on such evidence of capabilities in analyzing disability claims under ERISA, even when the video footage is of relatively short duration.  *See Finley v. Hartford Life & Acc. Ins. Co*., 400 Fed. App'x 198, 200 (9th Cir. 2010)(Hartford properly concluded that Finley lacked credibility where videos show Finley "performing vigorous yard work requiring the use of her arms in a way that far exceeded her reported abilities"); *Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1052 (8th Cir. 2011)(Union's surveillance showed that plaintiff was capable of performing tasks that his physicians said he could not perform); *Rose v. Hartford Fin. Svcs. Group, Inc*., 268 Fed. App'x 444, 451-2 (6th Cir. 2008)(claimant asserted that she could lift no more than three to four pounds yet was observed lifting 37.5 pound dog food bag); *Marantz v. Permanente Med. Gp., Inc. Long Term Disability Plan*,  687 F.3d 320, 330 (7th Cir. 2012)(video showed the claimant shopping, running across the street, lifting heavy objects found inconsistent with claimant's claimed restrictions and limitations); *Daigle v. Hartford Life & Acc. Ins*. Co., 452 Fed. App'x 689, 690 (8th Cir. 2011)("it was reasonable for Hartford to use videotape surveillance to observe Daigle's

27 - DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

condition...furthermore, this was only one piece of evidence Hartford cited in its decision");

*Cusson v. Liberty Life Assur. Co. of Boston*, 592 F.3d 215, 228-30 (1st Cir. 2010)(although only a limited amount of time shown by video, Liberty was entitled to take notice of the fact that it showed Cusson doing particular activities that she said she could not do); *Tsoulas v. Liberty Life Assur. of Boston*, 454 F.3d 69, 79 (1st Cir. 2006)(no abuse of discretion where Liberty considered surveillance evidence consisting of four hours per day for three days even though it only represented a "small-impliedly non-representative-fraction of each day").

Here, the video surveillance demonstrated that Plaintiff was much more active than she claimed. During periods of time when Plaintiff reported in her in-person interview that she was in flare, and was emailing her doctor that she was experiencing a flare, she engaged in vigorous yard work, including aerating soil, trimming, mowing the lawn, bending and pushing; and went for a two-hour hike.

### 1.    In-Person Interview of Plaintiff

Hartford conducted an in-person interview of the Plaintiff on May 12, 2017. (Vaughn Claim File 004027-004041). In the interview, Plaintiff stated that she could not return to work in a clinical setting due to asthma and diabetes. She also stated that she could not extend her ring and pinky fingers of her right hand due to dupuytren's contracture. She stated that she had asthma flares about a quarter of the time and that she been in the flare stage since March, 2017. She stated that when not in a flare she could engage in physical activities such as pushing and pulling, cooking dinner, driving, sitting for as long as she liked, walking and hiking, gardening and maintaining her yard, and lifting and carrying up to 30 lbs. However, she denied mowing the lawn and said that her son did that. She indicated that on non-asthma flare days she felt really strong and could walk for hours. Subsequently, during a phone call between Hartford's claim specialist and the Plaintiff

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

on October 16, 2017, Plaintiff confirmed again that she has asthma flares about once or twice per quarter. (Vaughn Claim File 000029).

### 2. Hartford's Referral of File for Independent Physician Review by Dr. Rea

In order to verify current functionality, Hartford referred the file to an independent third-party vendor for a medical records review, which was completed on September 12, 2017 by Dr. Joseph Rea, Board Certified in Occupational Medicine. (Vaughn Claim File 003133-3137). Dr. Rea reviewed medical records obtained by Hartford, the in-person interview report, and surveillance video. He agreed with the assessments by Plaintiff's treating physicians, Dr. Krenek (for dupuytren's) and Dr. Treat (for asthma), as to Plaintiff's abilities concerning her physical function. Dr. Treat had opined that Plaintiff could function up to 40 hours per week, lift up to 30 lbs. occasionally, up to 10 lbs frequently, and sit, stand, walk in an unrestricted manner. He noted that Dr. Krenek reported no restrictions or limitations from dupuytren's as of July 20, 2017. (Vaughn Claim File 003136). He agreed with Dr. Fourtounis, that during an asthma flare, Plaintiff would have to limit her activity. *Id.* Dr. Rea stated that "absent flares, there appears to be, based on the clinical evidence available, normal physical findings along with reasonably normal mild-to-moderate activity levels, as judged by the video surveillance suggesting that during those normal and majority of times there would be no indication for any significant physical impairment or resulting restriction or limitation." *Id.* Dr. Rea tried on three occasions to reach Dr. Fourtounis by phone to discuss his opinions, and left numerous messages, but never received a return phone call. *Id.* at 003133.

While Dr. Rea noted that some physicians reported flares 4-5 times per quarter, Plaintiff had stated that the incidence of flares in 2017 were only 1-2 times per quarter. Dr. Rea concluded in his September 12, 2017 report that Plaintiff could occasionally lift up to 30 lbs., with frequent

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

lifting up to 10 lbs., and that she had no other limitations involving sitting, standing, walking, climbing, kneeling, reaching in any direction or general use of her hands. (Vaughn Claim File 003136).

### 3. Hartford's Solicitation of Comment From Treating Physicians

On July 20, 2017, Hartford's Medical Case Manager sent a copy of Plaintiff's in-person interview, as well as the video surveillance, to her treating physicians. Three of Plaintiff's treating physicians stated either that she could work 40 hours per week or stated that they could not comment on disability. Dr. Krenek stated on July 25, 2017 that he had not placed any restrictions or limitations on Plaintiff. Dr. Rettman stated on July 29, 2017 that he had not seen Plaintiff since December 8, 2015 and could not comment on current functionality. Dr. Treat responded on August 14, 2017 that he agreed that the Plaintiff had the ability to work 40 hours per week, lift up to 30 lbs., perform unrestricted sit, stand, and walk, and that she had full use of her extremities. On September 13 and October 2, 2017, Hartford sent follow up correspondence, with a copy of the opinion by Dr. Rea, to Dr. Fourtounis for comment, but did not receive a response. On October 16, 2017, Dr. Fourtounis finally responded to the July 20, 2017 letter by stating that Plaintiff had episodic severe asthma flare-ups that also affect her diabetes control. He also noted severe dupuytren's contracture affecting both hands. He disagreed that Plaintiff could work 40 hours per week, lift up to 30 lbs., sit, stand, and walk unrestricted or use her upper extremities.

### 4. Hartford's Determination that Plaintiff was no Longer Disabled

Based on its review of Plaintiff's medical records, Dr. Rea's independent review, the surveillance, and taking into consideration Plaintiff's ongoing medical condition, Hartford concluded that Plaintiff no longer met the definition of "Disability" found in the Plan. Hartford notified Plaintiff by letter dated October 19, 2017 that it was denying ongoing LTD benefits

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

beyond October 31, 2017. Joint Statement of Facts (Dkt. 46), no. 10. (Vaughn Claim File 000155-160).

The denial letter explained that Hartford had also reviewed Plaintiff's Social Security Disability (SSD) award, but that the federal criteria for awarding such benefits differed from those set forth in the Hartford policy. While the award of SSD benefits was considered as one piece of relevant evidence, the SSA's determination from December, 2015 was not conclusive. The letter went on to explain why Hartford reached a different conclusion. (Vaughn Claim File 000156). It explained that Dr. Treat had reported to Hartford that Plaintiff had the ability to work 40 hours per week, lift up to 30 lbs, perform unrestricted sit, stand, and walk, and had full use of her upper extremities. Dr. Krenek imposed no restrictions on Plaintiff. Surveillance video showed vigorous work and exercise. Dr. Rea concluded after reviewing records and the surveillance that while he agreed that during a flare Plaintiff should limit her activities, he agreed with Drs. Treat and Krenek that Plaintiff could work up to 40 hours per week, lift up to 30 lbs., and sit, stand, walk, and use her upper extremities without limitation. Hartford concluded, based on all the evidence in the claim file, that Plaintiff was capable of performing the essential duties of her occupation as a family practice physician. (Vaughn Claim File 000159).

**E.** **Hartford's Further Review on Appeal by Obtaining Three Independent Peer Review Opinions from Board-Certified Physicians to Address Claimed Disability**

Through counsel, Plaintiff appealed Hartford's claim denial on February 13, 2018. The materials submitted with the appeal reflect that after receiving her claim denial, Plaintiff reached out to her treating physicians, Dr. Fourtounis and Dr. Treat, to ask that they provide opinions regarding her disability. Dr. Treat initially reminded Plaintiff that he could not make a determination regarding her "disability" but could merely state the facts of her medical condition. Both physicians eventually submitted an APS indicating that Plaintiff is "disabled" when

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

experiencing a "flare". (Vaughn Claim File 001531). Following receipt of voluminous appeal materials from Plaintiff's counsel, Hartford reviewed the records presented and conducted a new review of the claim file as a whole. After reviewing all of Plaintiff's medical records and other documents, surveillance video, and materials in the claim file, Hartford obtained three peer reviews following Plaintiff's appeal, including specialties covered by all of Plaintiff's claimed disabling conditions: diabetes, asthma, and dupuytren's contractures. The reviews were conducted by Dr. Fletcher, board certified in endocrinology, Dr. Shvarts, board certified in allergy and immunology, and Dr. Gause, board certified orthopedic surgeon.

### 1. Peer Review by Dr. Fletcher

In order to assess Plaintiff's diabetes and its effects on her functionality as of October 18, 2017, Hartford contacted a third-party vendor for an independent peer review opinion. The vendor arranged for Dr. Dana Fletcher to perform this review. Dr. Fletcher reviewed medical records and surveillance video, and rendered her opinion in a report dated March 14, 2018. (Vaughn Claim File 000287-295).

Dr. Fletcher opined that from an endocrinology perspective, Plaintiff is able to work full time 40 hours per week without restrictions as of October 18, 2017. Plaintiff may need to take brief 5-10 minute breaks up to 3 times per day to check her blood readings and treat with insulin. She may need to be absent from work 1-3 days at a time up to 4 times per year for acute illness due to asthma, diabetes, or mood changes due to prednisone. Dr. Fletcher stated that Plaintiff would need to attend visits with an endocrinologist every 2 – 3 months. She felt that diabetes in the A1c blood sugar ranges reported for Plaintiff from 2013-2017 (200-260) were controllable with increased insulin dosages and guidance from an endocrinologist. Plaintiff had failed to seek such guidance and had only seen an endocrinologist in 2010 and 2015, indicating that her poor

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

glucose control was due at least in part to lack of effort and adherence to regular attendance with her endocrinologist. She found no evidence that diabetes or medications were affecting cognition or behavior so as to interfere with her ability to perform her job. A test commonly used to determine a patient's mental state, conducted on Plaintiff prior to gastric bypass surgery, did not reveal any signs of mental impairment even though Plaintiff claimed to be on steroids for a flare at that time. With regard to blood sugar levels, the medical records did not document diabetic ketoacidosis or emergency room visits for high blood sugars, which would be expected in a diabetic patient with claimed levels as high as 900. There were no blood sugar logs, records, hospital or office visit notes presented by Plaintiff that support the 900 elevation claimed. During her hospitalization in December, 2017, while on IV steroids much stronger than the prednisone she used at home, the highest blood sugar level recorded was 425.

### 2. Peer Review by Dr. Shvarts

In order to assess the degree of restrictions and limitations from Plaintiff's asthma, Hartford contacted a third-party vendor for an independent peer review opinion. The vendor arranged for Anita Shvarts, M.D. to perform this review. Dr. Shvarts reviewed medical records and surveillance video, and rendered her opinion in a report dated March 14, 2018. (Vaughn Claim File 000277). Dr. Shvarts noted that although Plaintiff had reported that she has asthma flares 5-6 times per year, and that the flares last about 2-3 weeks, there was no objective evidence in the record to support these conclusions. She observed that Plaintiff has been managing her flares at home with prednisone, albuterol, and pulmicort rather than seeing her physicians. Accordingly, it was impossible to confirm the claimed frequency of the asthma flares. While Plaintiff sent several emails in 2017 to treating physician Fourtounis that she was experiencing an asthma flare, there were no subsequent visits or evaluations to confirm the extent of the flare. November 6, 2017 and

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

December 7, 2017 were the only dates documented in office visits and a hospital admission for asthma flares in 2017. In fact, in Dr. Shvarts' opinion, the fact that Plaintiff was sending emails to Dr. Fourtounis during a flare is inconsistent with the claim that she was totally incapacitated or lacked mentation during these times.

Dr. Shvarts concluded that the records did not support that Plaintiff had restrictions or limitations due to persistent asthma. She noted normal lung examination after a one-day hospital admission for flare. On non-asthma flare days, Plaintiff reported that she could walk for hours and felt really strong. Dr. Shvarts also addressed the claim that the treatment of Plaintiff by steroids caused her to be irritable and mentally stressed. She noted that when Plaintiff was hospitalized for an asthma flare on December 7, 2017, the record did not document that she was mentally unstable or had any behavioral changes while on IV steroids that were stronger than the prednisone she took at home.

Regarding physical effects of Plaintiff's asthma condition, Dr. Shvarts concluded that there was no evidence that during flares Plaintiff could only walk for five minutes and, in fact, the surveillance video demonstrating yard work and a two-hour hike showed otherwise. Accordingly, in Dr. Sharts' opinion, the medical record did not support restrictions and limitations for Plaintiff's claimed severe persistent asthma from either a physical or mental standpoint.

### 3.    Peer Review by Dr. Gause

To assess the claimed disability from dupuytren's contracture, Hartford contacted a third-party vendor for an independent peer review opinion. The vendor arranged for Dr. Trenton M. Gause to perform this review. He rendered an opinion in a report dated March 14, 2018. (Vaughn Claim File 00296-303). He reviewed records from Drs. Weissflog, Krenek, Fourtounis, Stocek, Treat, notes from occupational therapy, x-rays, claimant questionnaire, surveillance video and

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

report. *Id.* Dr. Gause noted the course of treatment for dupuytren's by Dr. Weissflog with aponeurotomy and Xiaflex injections, along with occupational therapy, and later treatment with Dr. Krenek. Dr. Gause made note of the surveillance video showing Plaintiff hiking while carrying drinks, and performing vigorous yard work, demonstrating no apparent difficulty grasping, manipulating, pushing tools and the mower. He found her self-reported symptoms excessive in light of the physical evidence and surveillance video.

Dr. Gause concluded that Plaintiff's dupuytren's contracture should not preclude her from performing her occupation. While noting that the condition affected her bilaterally, and mostly in the ring and little fingers, the video surveillance showed fluid use of her hands with tools, as well as grip strength and dexterity. Dr. Gause opined that Plaintiff would be able to perform simple grasping, gripping, keyboarding frequently in an occupational setting. The keyboarding and fine manipulation may be at a slower pace due to her contractures, but otherwise he would place no restrictions on her from performing a 40-hour work week.

**F.      Hartford's Decision to Uphold Denial of Further Benefits on Appeal is Supported by Substantial Evidence in the Record**

Following review of all of the records submitted by Plaintiff on appeal, the three peer review reports, the complete medical records received to date, Social Security Administration award, and all other materials in the file, Hartford upheld its decision that Plaintiff no longer met her burden of establishing disability from her occupation beyond October 31, 2017. It notified Plaintiff of its decision by letter dated March 26, 2018. The decision to deny further benefits was supported by substantial evidence in the file supporting the decision.

Although Plaintiff contends that she cannot sit, stand, or walk for weeks during and after an asthma flare, the medical records do not support the assertion. While reporting flares in emails and notes during 2017, the only documented office appointments for asthma with Dr. Fourtounis

35 - DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

were on January 23, 2017, October 16, 2017, November 6, 2017, and a telephone call on November 14, 2017. She had only one hospital admission, on December 7, 2017, for asthma. Plaintiff claimed to be totally incapacitated physically, and mentally unstable, during flares and for weeks after, yet was able to send emails, take notes, and hike, mow her lawn, perform other vigorous yard work during or immediately after reporting a flare. Since Plaintiff reported that she was in a flare in March and late April, 2017, she would have been on prednisone and in a flare during the extensive activity shown on the video surveillance.

On non-flare days, by Plaintiff's own admission, she can walk for hours, do yard work, and feels "really strong." Further, there was no medical evidence in the record supporting significant mental symptoms from steroid usage either before, during or after the December 7, 2017 hospital admission. Dr. Fourtounis' chart reflects normal mental status in notes regarding his 2017 visits and the hospital records do not document any abnormal mental status despite much higher dosages of steroids given during her stay. From the standpoint of her diabetes, and use of prednisone for asthma, while the steroid can elevate blood glucose levels, there is no evidence in the record that she suffered any impaired cognition, agitation, or aggressive behavior that would interfere with her ability to work as a physician. Dr. Fourtounis reported that she was doing well on Prozac for her depression since 2013, that it was well-managed, and not contributing to her disability.

As of October, 2017, and throughout the appeal, there was also insufficient evidence in the record to show that Plaintiff's dupuytren's contracture would prevent her from performing the essential duties of her occupation. The video surveillance showed good grip strength and gross manipulation of lawn tools, drink containers, and good fine manipulation of tools. While she may need to type more slowly, she is able to perform such activities with this condition.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

Plaintiff's occupation as a family practice physician is a light-duty physical demand occupation, and prior to her disability her regularly-scheduled work week was only 20 hours. While the claim documentation shows that Plaintiff experiences asthma flares requiring steroid treatment, and has elevated blood sugar, and hand contractures, there is insufficient evidence that such conditions preclude her from performing the duties of her occupation. Merely having a diagnosis will not, by itself, support a disability claim under the Policy definitions. *See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 879–80 (9th Cir.2004)(upholding plan administrator's decision in accepting opinion of "reviewing physician" over opinion of plaintiff's treating physicians), overruled on other grounds by *Abatie*, 458 F.3d 955.

**G.      Plaintiff's Citation to Earlier Medical Records and Prior Claim Approval are not Central to the Dispute as to Whether, as of October, 2017 Plaintiff Established Continuing Disability**

Plaintiff's Motion emphasizes prior claim approval from 2013-2017, and old claim comments from Hartford personnel from 2013-2017, as supporting the continued payment of benefits. Although recognizing that under applicable case authority there is no estoppel to deny benefits by reason of prior approval, Plaintiff then proceeds to argue that prior approval and claims notes should essentially render any denial thereafter inappropriate. Plaintiff gives lip service to the case law that states she bears the burden of demonstrating continuing entitlement to benefits and then essentially ignores that authority in her arguments. *See Torres v. Reliance Standard Life Ins. Co., supra*, 2010 WL 276074, at *7.

In addition, the prior Social Security approval should be given little weight in considering whether Hartford's denial of private disability benefits should be upheld. Where a favorable Social Security determination takes place years prior to the claim denial at issue, and there is no new agency determination based on newer facts, it should be accorded little weight in determining whether the later claim denial should be upheld. *See Inciong v. Ft. Dearborn Life Ins. Co.*, 570

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

Fed. App'x 724, 726 (9th Cir. 2014)("Under this policy, Inciong bore the burden of proving that he remained entitled to benefits, so the fact that he continued to receive Social Security disability benefits after July 2009 is less probative than Inciong contends").

## VI.    CONCLUSION

For the reasons stated above, Hartford respectfully requests that the Court grant Defendant's Cross-Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment concluding that Hartford did not abuse its discretion in denying further disability benefits.

## VII.    CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 10,947 words, including headings, footnotes, and quotations but excluding the caption, table of contents, table of authorities, signature block, exhibits, and any certificates of counsel.


Dated:  March 08, 2019

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**


By:    /s/ RUSSELL S. BUHITE
       Russell S. Buhite, OR 142529
       Russell.Buhite@ogletree.com
       206-693-7057
       Attorneys for Defendant

38 - DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone:  206-693-7057 | Fax: 206-693-7058

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of March, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

s/*Marissa Lock*
Marissa Lock, Practice Assistant
Marissa.lock@ogletree.com

36561457.1

39 - DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058